## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ETHEL "LAVERNE" MCVAE and | § | |
| WILEY WEST, Individually, | § | |
| And on behalf of the Estate of | § | |
| MARCUS MCVAE, Deceased, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:21-cv-00366 |
| | § | |
| JESSE PEREZ, Individually, | § | |
| | § | |
| *Defendant*. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, ETHEL "LAVERNE" MCVAE and WILEY WEST, Individually, and on behalf of the Estate of MARCUS MCVAE, Deceased, ("Plaintiffs") complaining of JESSE PEREZ, Individually, and for causes of action will respectfully show unto the Court as follows:

> "Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."

*Tennessee v. Garner*, 471 U.S. 1, 11, 105 S. Ct. 1694, 1701, 85 L. Ed. 2d 1 (1985).

## SUMMARY

On April 11, 2021, Defendant Department of Public Safety Trooper Jesse Perez killed Marcus McVae by shooting him in the back three times as Marcus ran in the opposite direction, unarmed, and without presenting a danger to any other person. Defendant Perez claimed that he shot Marcus during an altercation; however, the autopsy clearly contradicted this fabricated version of events, as the Bexar County Medical Examiner found all three shots were fired into Marcus from behind and there was no evidence of close-range firing.

Mr. West and Mrs. McVae now file this lawsuit against Defendant Perez for the wrongful death of their son and for violating their son's constitutional rights under the Fourth Amendment to the United States Constitution to be free from unreasonable seizures, by way of excessive force.

## I.
## PARTIES

1.      Plaintiff Ethel "Laverne" McVae is a resident of Tom Green County, Texas.

2.      Plaintiff Wiley West is a resident of Howard County, Texas.

3.      Plaintiffs Wiley West and Laverne McVae also bring this survival action on behalf of the estate of Marcus McVae, Deceased.

4.      Defendant Jesse Perez is a State Trooper with the Texas Department of Public Safety and may be served at his place of employment at the Texas Department of Public Safety – San Antonio office located at 6502 S New Braunfels Ave, San Antonio, TX 78223 or wherever he may be found. Defendant Perez is being sued in his individual capacity.

## II.
## JURISDICTION AND VENUE

5.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

6.      Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391 because all of the causes of action accrued in the Western District of Texas.

## III.
## FACTS AND ALLEGATIONS

7.      Marcus McVae was a young man, born on June 26, 1984. He was 34 years old at the time of his death.

8.      Marcus was never married and had no children.

9.      On or about April 12, 2019, Marcus and his companion Elizabeth Norton were traveling in their rented automobile from Abilene, Texas to purchase an automobile in San Antonio, Texas. They were traveling southbound on Interstate Highway 10.

10.     While Marcus and Ms. Norton were traveling through Kendall County, Texas they were pulled over by Defendant, Texas Department of Public Safety Trooper Jesse Perez, (hereinafter Defendant or "Perez"). This traffic stop occurred on Interstate Highway 10 near mile marker 537.

11.     Perez directed Marcus to exit the vehicle and Marcus complied.

12.     Perez patted Marcus down and determined he was unarmed.

13.     Perez then began handling Marcus in an unprovoked, aggressive manner and without notice moved to handcuff Marcus, despite Marcus complying with orders.

14.     Marcus appeared startled and began running away from Perez.

15.     However, at no time did Marcus threaten Perez, either verbally or physically.

16.     At no time did Marcus brandish a weapon or reach for his waistband indicating he had a weapon.

17.     Perez was aware that Marcus was not armed with a weapon as Perez had already completed a pat down of Marcus and found no weapons.

18.     Notably, no weapon was found on Marcus after Perez later shot him.

19.     At no time did Marcus physically assault Perez.

20.     At no time did Marcus strike, punch, kick, or push Perez.

21.     Instead, Marcus fled on foot away from Perez.

22.     Marcus fled on foot toward the woods – where no other people were present or could be seen.

23.     Perez immediately chased after Marcus.

24.     During the foot pursuit, Perez fired his service weapon at Marcus as he was fleeing.

25.     It is unclear at this time how many shots Perez fired; however, it is clear that three (3) bullets discharged from Perez's gun struck Marcus in the back and killed him.

26.     At no time prior to Perez shooting Marcus did Marcus point a weapon at Perez or hold a weapon in his hand, as Marcus did not even have a weapon on his person, which Perez knew because Perez had just patted Marcus down.

27.     At no time prior to Perez shooting Marcus did Marcus reach toward his waistband or to a pocket where a weapon could have been held, as Marcus did not even have a weapon on his person and was simply fleeing <u>away</u> from Perez at the time Perez shot Marcus three times in the back.

28.     At no time prior to Perez shooting Marcus did Marcus verbally threaten Perez, as Marcus was running <u>away</u> from Perez at the time Perez shot Marcus three times in the back.

29.     At no time prior to Perez shooting Marcus did Marcus physically threaten Perez, as Marcus was running <u>away</u> from Perez at the time Perez shot Marcus three times in the back.

30.     At no time prior to Perez shooting Marcus did Marcus physically threaten any other person, as Marcus was running <u>toward the woods</u> and not toward any other person at the time Perez shot Marcus three times in the back.

31.     At no time prior to Perez shooting Marcus was there any sort of physical altercation between Marcus and Perez, as Marcus was running <u>away</u> from Perez at the time Perez shot Marcus three times in the back.

32.     When Perez shot Marcus three times in the back as Marcus was running on foot <u>away</u> from him, Perez had only made contact with Marcus due to a traffic infraction and Perez did not suspect Marcus of committing a serious or violent felony offense.

33.     Marcus' body was transported to Bexar County for an autopsy.[1]

### **"Gunshot Wound A"**

34.     The Bexar County Medical Examiner found that one gunshot wound labeled by the medical examiner as "Gunshot Wound A", was an entrance wound located on the,

> "mid right back centered approximately 14 inches below the top of the head, 3 ½ inches to the right of the posterior midline of the back and two (2) inches above the left nipple line...[]" "No soot deposition or powder tattooing are present."

---

[1] The Bexar County Medical Examiner's Office Autopsy Report of Marcus McVae, Case No. 2019-0935, is attached as Exhibit A and is fully incorporated herein.

"The projectile proceeds through the soft and muscular tissues of the right back, coursing across the midline and fracturing the spinous processes of the 7th and 8th vertebrae and the posterior lamina of the 8th vertebra. The projectile then enters the left chest cavity through the posterior 8th rib at its vertebral attachment and perforates the lower lobe of the left lung before exiting the left chest cavity through the anterolateral 6th intercostal space."

"A gunshot wound of exit is located upon the anterior lateral left chest centered approximately 15 ½ inches below the top of the head, 10 inches to the left of the anterior midline and 3 ½ inches lateral to and ½ inch above the left nipple."

"A complete projectile is not recovered though a small orange plastic "plug" is recovered from along the wound track within the left lung...[]"

"**The path of the wound is <u>back to front</u>**, right to left and slightly downward...[]"

35.    The path of "Gunshot Wound A" being from back to front establishes that Perez shot Marcus from behind, while Marcus was running away and not during an altercation.

### **"Gunshot Wound B"**

36.    According to the Bexar County Medical Examiner, "Gunshot Wound B" entered,

"Upon the mid right buttocks, centered approximately 34 1/2 inches below the top of his head, 2 1/4 inches to the right of the posterior midline and 2 inches cranial to the inferior buttock...[n]o soot deposition or powdered tattooing are present."

"**The path of the wound is slightly <u>back to front</u>**, right to left and downward."

37.    The path of "Gunshot Wound B" being back to front establishes that Perez shot Marcus from behind, while Marcus was running away and not during an altercation.

### "Gunshot Wound C"

38.    According to the Bexar County Medical Examiner, "Gunshot Wound C" was,

"A 1.1 cm in diameter circular defect with 1 mm abrasion rim along the 11 -
1 o'clock is located upon McVae's proximal posterior right thigh, centered
approximately 38 inches below the top of McVae's head, 2 ¼ inches lateral
to the posterior midline of McVae's thigh and 1 ½ inches distal to McVae's
inferior buttock margin. No soot deposition or powdered tattooing [were]
present."

"The projectile courses through the musculature of the right thigh posterior
and medial to the femur, lacerating the mid right femoral vein and creating
marked hemorrhage along the wound track…"

"**The path of the wound is <u>back to front</u>**, right to left and downward."

39.    The path of "Gunshot Wound C" being back to front establishes that Perez

shot Marcus from behind, while Marcus was running away and not during an altercation.

### Fatal Gunshots

40.    "Gunshot Wound A" and "Gunshot Wound C" were fatal wounds, as the

Bexar County Medical Examiner stated,

"It is our opinion that Marcus McVae, a 34 year old adult male, died as a
result of gunshot wounds to the chest and right thigh which injure the spinal
column, lung and right femoral vein."

41.    The rural location of the shooting and the distance between Marcus and

Perez at the time Perez shot Marcus in the back three times demonstrates that Marcus

posed no immediate danger to Perez or the public.

42.    Notably, the Bexar County medical examiner found that there was "no

evidence" of "close range firing" for any of the three gunshot wounds. Therefore, Perez's

claims that he was defending himself from Marcus at close range or that there was an

altercation are false and intended to mislead his superiors, the public, and the trier of fact.

### Medical Attention

43.     Approximately fifteen (15) minutes after Perez shot Marcus from behind, several Boerne Police Department officers, Kendall County Sheriff's officers and Texas DPS troopers arrived at the scene.

44.     Emergency Medical Service (EMS) personnel were called to the scene and upon arrival, tried to stop Marcus' bleeding and then tried to revive him. Unfortunately, Marcus had already bled profusely from the three (3) gunshot wounds to his backside.

45.     Marcus McVae unnecessarily suffered physical pain and mental anguish and died as a result of Perez's unconstitutional actions.

46.     At all times relevant to this lawsuit, Defendant Perez was acting under color of law as a Texas State Trooper, as he was on duty as a State Trooper, was in full law enforcement uniform, was driving his department issued vehicle, he performed a traffic stop on the car Marcus was driving, attempted to handcuff Marcus, gave chase when Marcus fled on foot, and then fired his department issued firearm, fatally striking Marcus in the back three times.

### IV.
### CAUSES OF ACTION

### Count One

### Excessive Force
### Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983
### Against Defendant Jesse Perez

47.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

48.     Acting under the color of law, Defendant Perez deprived Marcus of the rights and privileges secured to him by the Fourth Amendment to the United States

Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of deadly force.

49.     Plaintiffs bring this cause of action pursuant to 42 U.S.C. § 1983.

50.     The amount of force used by Perez against Marcus as described above, specifically but not limited to, when Perez fatally shot Marcus three times from behind as Marcus fled on foot, was unarmed, was only suspected of a traffic violation, and was not presenting an immediate risk or threatening any officer or other person, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain, suffering, and death upon Marcus McVae.

51.     A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

52.     Although officers may need to use "physical force … to effectuate [a] suspect's compliance" when he refuses to comply with commands during a traffic stop, the officers still must assess "the relationship between the need and the amount of force used." *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012); quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009).

53.     In April of 2019, the law was clearly established that using deadly force by shooting an unarmed person who poses no reasonable threat to the officer or the public in the back as he flees on foot is an unjustified act of excessive force in violation of the Fourth Amendment to the United States Constitution. *Tennessee v. Garner*, 471 U.S. 1 (1985).

54.     As the Supreme Court explained in *Garner*,

Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. A police officer may not seize an unarmed, nondangerous suspect by shooting him dead.

*Garner*, 471 U.S. at 11.

55.     Because Marcus was not posing an immediate threat to Perez or any other person as he fled on foot, unarmed, and toward the woods, *Garner* clearly established that Perez's actions were a violation of the Fourth Amendment.

56.     The test of reasonableness under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872, 104 L. Ed. 2d 443 (1989)

57.     Marcus was not suspected of committing a felony offense when Perez fatally shot Marcus three times from behind as Marcus fled on foot, was unarmed, was only suspected of a traffic violation, and was not presenting an immediate risk or threatening any officer or other person.

58.     Marcus was only suspected of committing a minor traffic offense when Perez fatally shot Marcus three times from behind as Marcus fled on foot, was unarmed, was only suspected of a traffic violation, and was not presenting an immediate risk or threatening any officer or other person.

59.     While Marcus was attempting to flee, he was doing so on foot, had not brandished a weapon, had not reached for his waistband or toward a pocket where a weapon could have been kept, made no verbal or physical threats, was running away from Perez, and was not running toward any other person when Perez fatally shot Marcus three times from behind as Marcus fled on foot, was unarmed, was only suspected of a traffic violation, and was not presenting an immediate risk or threatening any officer or other person.

60.     Marcus was not threatening any officer or other person immediately prior to when Perez fatally shot Marcus three times from behind as Marcus fled on foot, was unarmed, was only suspected of a traffic violation, and was not presenting an immediate risk or threatening any officer or other person.

61.     A reasonable officer would know that the use of deadly force by shooting Marcus three times in the back as he fled on foot was <u>clearly excessive</u>, when Marcus had not brandished a weapon, had not reached for his waistband or toward a pocket where a weapon could have been kept, made no verbal or physical threats, was running away from Perez, was not running toward any other person, was only suspected of a traffic violation, and was not presenting an immediate risk or threatening any officer or other person, and who the use of deadly force was not warranted.

62.     A reasonable officer would know that the use of deadly force by shooting Marcus three times in the back as he fled on foot was <u>clearly unreasonable</u> when Marcus had not brandished a weapon, had not reached for his waistband or toward a pocket where a weapon could have been kept, made no verbal or physical threats, was running away from Perez, was not running toward any other person, was only suspected of a traffic

violation, and was not presenting an immediate risk or threatening any officer or other person, and who the use of deadly force was not warranted.

63.     A reasonable officer in Defendant Perez's shoes would know that deadly force by shooting Marcus three times in the back as he fled on foot, when that person had not brandished a weapon, had not reached for his waistband or toward a pocket where a weapon could have been kept, made no verbal or physical threats, was running away from Perez, was not running toward any other person, was only suspected of a traffic violation, and was not presenting an immediate risk or threatening any officer or other person, and who the use of deadly force was not warranted is clearly unreasonable and excessive.

64.     Defendant Perez was acting under color of law as a State Trooper when he fatally shot Marcus in the back three times as Marcus fled on foot.

65.     As a direct result of the force used against him by Defendant Perez, Marcus has suffered physical injury, pain, mental anguish, and death.

66.     These injuries were not caused by any other means.

## Count Two

### Wrongful Death
**Against Defendant Perez**

67.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

68.     Plaintiff Wiley West is Marcus McVae's father.

69.     Plaintiff Laverne McVae is Marcus McVae's mother.

70.     By reason of Defendant Perez's wrongful conduct of fatally shooting Marcus in the back three times as Marcus fled on foot without posing a reasonable, credible, or imminent threat to any person, Defendant Perez is liable for damages.

71.     To recover on a wrongful death claim under 42 U.S.C. § 1983, a plaintiff who has standing must show both (1) the alleged constitutional deprivation required by 42 U.S.C. § 1983 and (2) the causal link between the defendant's unconstitutional acts or omissions and the death of the victim.

72.     The Defendant's excessive use of deadly force against Marcus McVae, as described herein, violated Marcus McVae's constitutional right under the Fourth Amendment and caused his death.

73.     Defendant Perez's conduct that caused Marcus McVae's death was a producing cause of injury, which resulted in the following damages: loss of a family relationship, love, support, services, emotional pain and suffering, and Defendant Perez is liable for his acts and infliction of emotional distress caused by the wrongful death of Marcus McVae.

74.     Plaintiffs seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## Count Three

## <u>Survival Action</u>
**Against Defendant Perez**

75.     Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

76.     Plaintiffs Wiley West and Laverne McVae bring this claim on behalf of the estate of Marcus McVae.

77.     The Texas Supreme Court has found that a family settlement agreement is an alternative method to administration of an estate in Texas and that it is a "favorite of the law." *Shepherd v. Ledford*, 962 S.W.2d 28, 32 (Tex. 1998).

78.    Administration of Marcus McVae's estate was not necessary because Marcus McVae died intestate and Plaintiffs Wiley West and Laverne McVae, the only heirs of Marcus McVae's estate, have entered into a family settlement agreement providing for the distribution of all assets of the estate and for the payment of all debts of the estate. Therefore, Plaintiffs Wiley West and Laverne McVae have capacity as the only heirs to bring this survival action and to sue on behalf of Marcus McVae's estate. *Cooper v. Coe*, 188 S.W.3d 223, 227–28 (Tex. App. 2005) (if estate administration is unnecessary because a family settlement agreement has been reached among the heirs at law of an intestate deceased, the heirs have capacity to bring the survival action if that agreement is pleaded and proved.).

79.    Marcus McVae died as a result of Defendant Perez's wrongful conduct.

80.    Marcus McVae would have been entitled to bring this action against Defendant Perez if he had lived.

81.    The Decedent's right of action for wrongful conduct against the Defendant survives in favor of the estate of the deceased.

82.    Defendant Perez is liable to the Estate of the deceased for the loss of Marcus McVae's life, pain and suffering, and the violation of his civil rights.

83.    Plaintiffs seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## V.
## PUNITIVE DAMAGES

84.    Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

85.    When viewed objectively from the standpoint of Defendant Perez, at the time of the occurrence, Defendant Perez's conduct involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others.

86.    As a direct, proximate, and producing cause of Defendant Perez's reckless or callous indifference to Marcus McVae's constitutionally protected rights, Plaintiffs are entitled to recover punitive damages against Defendant Perez.

## VI.
## DAMAGES

87.    Plaintiffs repeat and re-allege each and every allegation contained in the above paragraphs as if fully repeated herein.

88.    Marcus McVae's injuries and death were a foreseeable event due to Defendant Perez knowing that shooting Marcus in the back multiple times with his department issued firearm had a high probability of killing Marcus.

89.    Marcus McVae's injuries and death were directly and proximately caused by Defendant Perez's excessive use of deadly force against Marcus McVae.

90.    As a result, Plaintiffs are entitled to recover all actual damages allowed by law.

91.    Plaintiffs contends Defendant Perez's conduct constitutes malice, evil intent, or reckless or callous indifference to Marcus McVae's constitutionally protected rights.

92.    Thus, Plaintiffs are entitled to punitive damages against Defendant Perez.

93.     As a direct and proximate result of the occurrence which made the basis of this lawsuit, Plaintiffs were forced to suffer:

       a.     Actual damages;

       b.     Loss of affection, consortium, comfort, financial assistance, protection, and care;

       c.     Pain and suffering and mental anguish suffered by Marcus McVae prior to his death;

       d.     Mental anguish and emotional distress suffered by Plaintiffs;

       e.     Loss of quality of life;

       f     Funeral and burial expenses;

       g.     Loss of service;

       h.     Loss of earnings and contributions to Plaintiffs;

       i.     Prejudgment interest; and

       j.     Post judgment interest.

94.     Pursuant to 42 U.S.C. § 1983 and § 1988, Plaintiffs seeks to recover, and requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VII.
## ATTORNEY'S FEES

95.     If Plaintiffs prevail in this action, by settlement or otherwise, Plaintiffs are entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## VIII.
## JURY REQUEST

96.     Plaintiffs respectfully request a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that judgment be rendered against Defendant Perez. Plaintiffs further pray for all other relief, both legal and equitable, to which Plaintiffs may be justly entitled.

Respectfully submitted,

*/s/ Scott H. Palmer*
SCOTT H. PALMER,
Texas Bar No. 00797196

*/s/ James P. Roberts*
JAMES P. ROBERTS,
Texas Bar No. 24105721

SCOTT H. PALMER, P.C.
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
scott@scottpalmerlaw.com
james@scottpalmerlaw.com

**Attorneys for Plaintiff Wiley West, Individually, and on behalf of the Estate of Marcus McVae, Deceased**

**EDWARD L. PIÑA & ASSOCIATES, P.C**.

*/s/ Edward L. Piña*
**EDWARD L. PIÑA**
Attorney at Law
State Bar Number: 16011352
**MATTHEW N. GOSSEN**
Attorney at Law
State Bar Number: 24069814
***The Ariel House***
8118 Datapoint Drive
San Antonio, Texas 78229
Telephone: (210) 614-6400
Facsimile: (210) 614-6403
E-mail: epiña@arielhouse.com
E-mail: mgossen@arielhouse.com

ATTORNEYS FOR LAVERNE MCVAE,
INDIVIDUALLY, AND ON BEHALF OF THE
ESTATE OF MARCUS MCVAE, DECEASED